**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF CALIFORNIA**
**FRESNO DIVISION**

In re:

Michael Lloyd Lusk, and
Carol Ann Lusk

       Debtors.

_____

Susan Peterson,

            Plaintiff,

v.

Michael Lloyd Lusk,

       Defendant.

Case No.: 17–10245–B–13

Chapter 13

ADVERSARY PRO. NO.:
17–01016–B

MEMORANDUM DECISION REGARDING ADVERSARY
PROCEEDING OBJECTING TO DISCHARGEABILITY OF DEBT

Susan P. Peterson ("Ms. Peterson") filed her adversary proceeding complaint against Michael Lloyd Lusk ("Mr. Lusk") to determine nondischargeability of debt under 11 U.S.C. §§ 1328(a)(2) and 523(a)(4). Ms. Peterson filed her first amended complaint on March 10, 2017, whereby Ms. Peterson alleged that Mr. Lusk engaged in fraud or defalcation regarding Allstate

retirement benefits that were community property of Ms. Peterson and Mr. Lusk's marriage. Mr. Lusk filed his answer on March 24, 2017, which included no affirmative defenses.

The matter was tried to the court on March 22 and March 23, 2018. Lisa Holder, Esq., appeared on behalf of Ms. Peterson. Peter Bunting, Esq., appeared on behalf of Mr. Lusk.

The court ordered the parties to prepare proposed findings of fact and conclusions of law, and after submission the matter was deemed submitted. For the reasons set forth below, judgment will be entered in favor of Peterson and the debt is nondischargeable in Mr. Lusk's bankruptcy.

This memorandum decision contains findings of fact and conclusions of law required by Federal Rule of Civil Procedure 52(a), made applicable to this adversary proceeding by Federal Rule of Bankruptcy Procedure 7052.[1] The bankruptcy court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157, 11 U.S.C. §§ 1328(a)(2) and 523(a)(4) and Rules 4007(c) and 7001(6) of the Fed. R. Bankr. Proc., and General Orders 182 and 330 of the U.S. District Court for the Eastern District of California. This is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(I). Peterson (by her complaint) and Lusk (by his answer) agreed that this court may enter final orders regarding this adversary proceeding under 28 U.S.C. § 157(c)(2).

---

[1] Unless otherwise indicated, all chapter, section and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1330, and to the Federal Rules of Bankruptcy Procedure, Rules 1001–9036, as enacted and promulgated after October 17, 2005, the effective date of The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub. L. 109-8, Apr. 20, 2005, 119 Stat. 23.

**Background and Findings of Fact**.

The joint chapter 13 case was filed on January 26, 2017 by spouses Michael Lloyd Lusk and Carol Ann Lusk. [Exhibit 37.][2] The Lusks' Schedule F reflected a $146,877.00 debt owed to Ms. Peterson described as "Judgment," not subject to offset, and not contingent, unliquidated, or disputed. [*Id.*, at 295.]

Ms. Peterson and Mr. Lusk stipulated to facts, and facts were adduced at trial. The court finds the below facts to be true.

Michael Lusk is an educated and professional man, with a bachelor's degree in marketing from California State University at Chico. [TT1 12:23-25; 13:1-2.][3] He is a California licensed insurance agent, for personal property and causality insurance. [TT1 13:4-6, 19-20.] In his profession, he deals with contracts. [TT1 14:3-5.] He's been self-employed as an insurance agent since 2006. [TT1 14:5-8.] Before then, he worked with Allstate Insurance from 1986 until 2005. [TT1 14:9-14.]

During his time with Allstate, he earned retirement benefits, some of which were the community property of Mr. Lusk's marriage to Susan Peterson. [SF 21, 22.][4]

Lusk and Peterson were married April 10, 1982, and separated January 7, 1994. [SF 1.] During Peterson's marriage to Lusk, Lusk was employed by Allstate Insurance Company

---

[2] "Exhibit" means the number of the joint trial exhibit from the trial binders.
[3] "TT1" means Trial Transcript 1, from the first day of trial, March 22, 2018. The first number (here 12) refers to the transcript page, and the following numbers (here 23-25) refer to the lines on the page. "TT2" means the trial transcript from the second day of trial, March 23, 2018.
[4] "SF" means stipulated fact, from the Joint Pretrial Order, document 41 on the court's docket.

("Allstate") and earned retirement benefits through his

employment with Allstate. [SF 2.]

On August 5, 1994, the Ventura County Superior Court

entered its Judgment of Dissolution of Marriage between

Peterson and Lusk (the "Dissolution Judgment"). [SF 3.] The

Dissolution Judgment incorporated a marital settlement

agreement ("MSA"; Exhibit 2; SF 4.] The MSA provides that the

"pension benefits in Husband's name arising out of this

employment with Allstate Insurance Company" must be divided

equally between the parties [Exhibit 2:11, 12; SF 5.] The MSA

states "The parties agree that there is a community interest in

the Husband's pension and retirement plan through his

employment by Allstate Insurance Company." (Id.) [SF 6.] The

MSA states "The parties further agree that the court that

enters the decree of dissolution between them shall reserve

jurisdiction to enforce the Wife's right to receive such

[retirement.] payments from Husband, or directly from the

retirement plan." (Id.) [SF 7.]

In 2007, Ms. Peterson wanted to move out of state, and the

parties entered into an agreement whereby Ms. Peterson waived

spousal support, and they agreed to child visitation ("Move

Away Order"). [Exhibit 55:1469-1472; TT1 105:16-106:8.]

Community property division was never discussed in the context

of the 1997 Move Away Order. [TT1 106:9-15; TT2 32:9-33:2.] Mr.

Lusk's position that the Move Away Order absolved him from

community property division and any obligation regarding the

retirement division [TT2 15:19-16:9] is not supported by the

plain meaning of the Move Away Order, and implausible. Mr. Lusk

3O29458                            4

did not raise the Move Away Order as a defense in the Ventura County Superior Court [TT2 34:20-35:6.]

Matthew graduated from college in 2010. [TT1 106:16-20.] Ms. Peterson involved Mr. Lusk in the graduation by sending Mr. Lusk a graduation announcement. Then she sent graduation pictures and some correspondence. [TT1 106:24-107:6.] Ms. Peterson included a note in one of the correspondences that "the retirement plan is all that we have to deal with." [TT1 107:7-16.] Mr. Lusk did not respond. [TT1 107:17-20.]

Ms. Peterson does not have any retirement benefits coming to her from any employer during marriage or before marriage. [TT1 107:24-108:4.]

As determined by the 2016 Order of the state court, Lusk owed Peterson a fiduciary duty under the terms of the 1994 Judgment with regard to the Allstate Pension Plan and the Allstate 401(k) Savings Plan. [SF 8.] On September 6, 2013, Lusk requested and received a lump sum distribution from the Allstate Pension Plan in the amount of $578,686.19. This was a complete distribution of Lusk's benefits under the Allstate Pension Plan (Exhibit 43:0457). [SF 9.] Lusk withdrew the $578,686.19 from the Allstate Pension Plan without notifying Peterson and without paying any portion of said monies to her. [SF 10.]

In addition to the Allstate Pension Plan, Lusk also had the Allstate 401(k) Savings Plan with Allstate. [SF 11.] On May 18, 1999, Lusk withdrew the sum of $34,197.59 from the Allstate 401(k) Savings Plan (Exhibit 43:0458). [SF 12.] The withdrawal of the $34,197.59 from the Allstate 401(k) Savings Plan by Lusk

was done without Peterson's knowledge or consent and without paying any portion of said monies to her. [SF 13.]

Despite the MSA, Peterson never received any monies from either the Allstate Pension Plan or the Allstate 401(k) Savings Plan. [SF 14.] Lusk never informed Peterson that he had withdrawn all of the funds from the Allstate Pension Plan or the $34,197.59 from the Allstate 401(k) Savings Plan. [SF 15.] In March 2014, Peterson began inquiring to Lusk about her interest in the Allstate Pension Plan or the Allstate 401(k) Savings Plan [SF 16; Trial Exhibits 4, 5, and 6, 32 –37.]. Mr. Lusk received the Letters from Mr. Goodman, but did not respond to either Ms. Peterson or Mr. Goodman to enquire why Mr. Goodman sought information about the plans. [TT1 20:2 – 22:1; 99:12–100:18.]

Lusk did not provide any information to Peterson regarding his withdrawal of all of the funds from the Allstate Pension Plan and the Allstate 401(k) Savings Plan. [SF 17.] Peterson learned of Lusk's withdrawals from the Allstate Pension Plan and the Allstate 401(k) Saving Plan only after retaining an attorney and requesting an accounting from QDRO Consultants Co. ("QDRO Consultants"), Allstate's administrator of Qualified Domestic Relations Orders (Exhibit 8:44 – 45; Exhibit 43:0457 – 465). [SF 18.] Mr. Goodman submitted a subpoena to Allstate, and Mr. Lusk moved to quash the subpoena. [TT1 23:10–12.] Mr. Goodman made another subpoena to Allstate, and Mr. Lusk again moved to quash. [TT1 23:12–18.] The parties went to court on the motion to quash, and the subpoena was quashed. [Id..] Mr. Lusk then realized that "Ms. Peterson is not going away." [TT1

23:18-19.] Mr. Lusk then signed the release authorizing
Allstate to release information regarding the plans [Exhibit
7:42; TT1 23:2-5, 22.], and realized "She's not going to stop."
[TT1 23:21.]. At no time did Mr. Lusk contact Ms. Peterson
regarding the letters sent by Mr. Goodman. [TT1 100:23-101:1.]
Ms. Peterson learned that Allstate retirement benefits had been
completely distributed to Mr. Lusk by the May 23, 2016 letter
[Exhibit 8:44; TT1 101:15-102:2.] Ms. Peterson filed her
request for order (motion) to determine her interest in the
retirement benefits on August 27, 2015 [Exhibit 56:1474; TT1
102:3-18.]

    Mr. Lusk testified Wells Fargo account numbers ending in
7910 [Exhibit 10.] and 2931 [Exhibit 19.] were funded from the
pension plan. [TT1 31:1-4.] On February 28, 2015, Wells account
number 7910 held $100,000.21. [TT1 31:18-20.] Between March 1,
2015, and March 22, 2016, Mr. Lusk transferred $85,377.66 from
account 7910 to Mr. Lusk's separately-owned Wells Fargo
checking account 9751 [Plaintiff's Trial Exhibit 62; Exhibits
10 through 18 and 44; TT1 32:10-37:10.] On January 1, 2015, Mr.
Lusk's Wells Fargo Traditional IRA account 2931 held
$252,980.95. [Plaintiff's Trial Exhibit 62; Exhibit 19; TT1
37:11-23.] Between January 1, 2015 and January 26, 2017, MT
took $26,000 in cash withdrawals, and transferred $180,619.85
to his separately owned checking account, Wells number 9751.
[Plaintiff's Trial Exhibit 62; Exhibits 19 through 34 and 44;
TT1 37:11-37:23.]

    Mr. Lusk's testimony and bank records showed that Mr. Lusk
made these withdrawals From Wells Fargo Account 9751:

3O29458                              7

| Date | Amount | Type | Purpose | Record |
|------|--------|------|---------|--------|
| April 16, 2015 | $ 2,200.00 | Withdrawal in branch | No recollection | Exhibit 44: 491; TT1 38:17–39:1 |
| April 21, 2015 | $ 3,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 491; TT1 39:2–6 |
| May 5, 2015 | $ 3,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 496; TT1 39:7–11 |
| June 5, 2015 | $ 1,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 504; TT1 39:12–19 |
| June 8, 2015 | $ 2,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 504; TT1 39:20–25 |
| June 24, 2015 | $ 3,800.00 | Withdrawal in branch | No recollection | Exhibit 44: 505; TT1 40:1–6 |
| June 30, 2015 | $ 11,500.00 | Withdrawal in branch | No recollection | Exhibit 44: 505; TT1 40:7–13 |
| July 8, 2015 | $ 3,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 510; TT1 40:14–21 |
| July 31, 2015 | $ 5,300.00 | Withdrawal in branch | No recollection | Exhibit 44: 511; TT1 40:22–41:2 |
| August 6, 2015 | $ 3,500.00 | Withdrawal in branch | No recollection | Exhibit 44: 515; TT1 41:3–12 |
| September 3, 2015 | $ 3,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 516; TT1 41:19–42:2 |
| September 10, 2015 | $ 1,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 491; TT1 42:3–6 |
| September 21, 2015 | $ 8,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 521; TT1 42:7–13 |
| September 21, 2015 | $ 3,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 521; TT1 42:14–20 |
| October 23, 2015 | $ 7,000.00 | Bank check purchase | No recollection | Exhibit 44: 527; TT1 42:21–43:3 |
| October 26, 2015 | $ 16,000.00 | Bank check purchase | No recollection | Exhibit 44: 528; TT1 43:4–10 |
| November 6, 2015 | $ 3,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 534; TT1 43:11–18 |
| November 9, 2015 | $ 1,700.00 | Withdrawal in branch | No recollection | Exhibit 44: 534; TT1 43:19–24 |
| November 30, 2015 | $ 12,000.00 | Bank check purchase | No recollection | Exhibit 44: 536; TT1 43:25–44:7 |
| December 3, 2015 | $ 1,500.00 | Withdrawal in branch | No recollection | Exhibit 44: 540; TT1 44:8–14 |
| January 4, 2016 | $ 3,500.00 | Withdrawal in branch | No recollection | Exhibit 44: 547; TT1 44:15–21 |
| January 8, 2016 | $ 18,852.23 | Bank check purchase | No recollection | Exhibit 44: 548; TT1 44:22–45:1 |
| January 8, 2016 | $ 5,000.00 | Withdrawal in branch | No recollection | Exhibit 44:548; TT1 45:2–5 |
| January 20, 2016 | $ 13,000.00 | Bank check purchase | No recollection | Exhibit 44: 548; TT1 45:6–12 |
| January 22, 2016 | $ 3,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 548; TT1 45:13–16 |
| January 27, 2016 | $ 3,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 549; TT1 45:17–22 |
| February 2, 2016 | $ 2,600.00 | Withdrawal in branch | No recollection | Exhibit 44: 554; TT1 45:23–46:5 |

3O29458

| | | | | |
|---|---|---|---|---|
| 1 | February 3, 2016 | $ 1,700.00 | Withdrawal in branch | No recollection | Exhibit 44: 554; TT1 46:6-11 |
| 2 | February 16, 2016 | $ 2,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 555; TT1 46:12-18 |
| 3 | February 18, 2016 | $ 5,000.00 | Bank check purchase | No recollection | Exhibit 44: 556; TT1 46:19-25 |
| 4 | March 1, 2016 | $ 1,115.00 | Bank check purchase | No recollection | Exhibit 44: 562; TT1 47:1-7 |
| 5 | March 23, 2016 | $ 26,500.00 | Bank check purchase | No recollection | Exhibit 44: 564; TT1 47:8-14 |
| 6 | March 28, 2016 | $ 3,916.49 | Withdrawal in branch | No recollection | Exhibit 44: 564; TT1 47:15-20 |
| 7 | April 11, 2016 | $ 10,035.00 | Withdrawal in branch | No recollection | Exhibit 44: 570; TT1 47:21-48:4 |
| 8 | April 11, 2016 | $ 5,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 570; TT1 48:5-7 |
| 9 | May 3, 2016 | $ 1,700.00 | Withdrawal in branch | No recollection | Exhibit 44: 576; TT1 48:23-49:6 |
| 10 | May 11, 2016 | $ 2,050.00 | Withdrawal in branch | No recollection | Exhibit 44: 577; TT1 49:7-11 |
| 11 | June 3, 2016 | $ 1,700.00 | Withdrawal in branch | No recollection | Exhibit 44: 583; TT1 49:12-18 |
| 12 | August 3, 2016 | $ 3,900.00 | Withdrawal in branch | No recollection | Exhibit 44: 589; TT1 49:19-50:2 |
| 13 | September 2, 2016 | $ 3,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 597; TT1 50:3-13 |
| 14 | October 1, 2016 | $ 2,500.00 | Withdrawal in branch | No recollection | Exhibit 44: 604; TT1 50:14-22 |
| 15 | October 20, 2016 | $ 8,200.00 | Withdrawal in branch | No recollection | Exhibit 44: 605; TT1 50:23-51:4 |
| 16 | November 1, 2016 | $ 1,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 610; TT1 51:5-12 |
| 17 | November 8, 2016 | $ 1,400.00 | Withdrawal in branch | No recollection | Exhibit 44: 611; TT1 51:13-18 |
| 18 | December 28, 2016 | $ 1,000.00 | Withdrawal in branch | No recollection | Exhibit 44: 620; TT1 51:19-52:1 |

19 **TOTAL  $225,168.72**

20

21     Mr. Lusk testified regarding the vehicles scheduled on

22 Schedule A/B:

| Vehicle | Scheduled Value | Date Purchased | Driver | Record |
|---|---|---|---|---|
| 2015 Volkswagon Passat | $ 12,012.00 | | Mr. Lusk | Exhibit 37:278; TT1 53:15-54:4 |
| 2010 Mercedes-Benz GL-550 | $ 21,231.00 | 2014-2016 | Carol Lusk | Exhibit 37:278; TT1 54:5-23 |
| 2012 Nissan Cube | $ 9,707.00 | 2014-2015 | Daughter | Exhibit 37:278; TT1 54:24-55:13 |
| 2006 Chevy Corvette | $ 27,215.00 | 2014-2016 | Carol Lusk | Exhibit 37:278; TT1 55:14-23, 56:9-13 |
| 2000 GMC Sierra | $ 2,598.00 | 2014-2016 | Daughter Kelly | Exhibit 37:278; TT1 56:14-57:8 |

| | | | | |
|---|---|---|---|---|
| 2008 Piaggio | $ 1,000.00 | 2014-2016 | No one | Exhibit 37:279; TT1 57:16-58:1 |
| 2004 Kawasaki Vulcan | $ 3,500.00 | 2014-2017 | Mr. Lusk | Exhibit 37:279; TT1 58:2-11 |
| 2014 Can-AM | $ 18,000.00 | 2014-2017 | Carol Lusk | Exhibit 37:279; TT1 58:13-23 |
| 2005 Kawasaki Nomad | $ 3,000.00 | 2014-2017 | Mr. Lusk | Exhibit 37:279; TT1 58:24-59 |
| **VALUE** | **$ 98,263.00** | | | |

Schedule A/B at question 21 reflected the Wells Fargo Bank Rollover IRA account 2931 held $83,983.51 on the January 26, 2017 petition date [Exhibit 37:282; TT1 60:9-19.], and Wells Fargo Bank Rollover IRA account 7910 held $9,792.64 [Exhibit 37:282; TT1 63:6-9.]. On the trial date (March 22, 2018), Wells Fargo Bank Rollover IRA account 2931 held "just a little over 30." [TT1 63:10-12.] Mr. Lusk used the approximately $54,000.00 between January 2017 and March 2018 to supplement his income. [TT1 63:17-64:5.] On the trial date, Wells Fargo Bank Rollover IRA account 7910 held about $2,000.00. [TT1 64:13-25.] Mr. Lusk used the approximately $8,000.00 between January 2017 and March 2018 to supplement his income. [TT1 65:5-9.]

Joint debtors' income from all sources (other than the Wells Fargo Bank Rollover IRA accounts) was $140,847 in 2015, and $161,155 in 2016. MT's Wells Fargo Bank Rollover IRA account distributions in 2015 of $189,998 made 2015 income $330,845; IRA distributions in 2016 of $100,499 in 2016 made 2016 income $261,654. [Exhibit 37:309; TT1 67:23-70:3.] Mr. Lusk testified that he and his wife had business expenses of about $25-26,000 per year. [TT1 90:15-23.] Mr. Lusk testified that he and his wife received a tax bill for the income in these years. [TT1 90:10-91:11.]

While Mr. Lusk and Ms. Peterson were rearing their son, Matthew, they exchanged notes regarding financial matters, such as debts and reimbursements for support and activities. [Exhibit 48:1345-1387; TT1 76:22-85:19.].

Ms. Peterson delivered to Mr. Lusk a noted dated June 11, 2005 regarding child support arrearage owned by Mr. Lusk to Ms. Peterson. [Exhibit 48:1384; TT1 85:21-86:6.] Ms. Peterson delivered to Mr. Lusk a noted dated September 10, 2005, regarding a payment plan to cure the child support arrearage owned by Mr. Lusk to Ms. Peterson. [Exhibit 48:1384; TT1 86:7-14.] In or about July 2005, Mr. Lusk called Ms. Peterson to discuss the June 11, 2005 letter, and to resolve the issues regarding Matthew's outstanding support. [Exhibit 48:1384; TT1 94:9-96-13.] Mr. Lusk and Ms. Peterson resolved the outstanding support issues during the call. [TT1 96:14-16.] Ms. Peterson has a clear recollection of the telephone call. [TT1 96:17-19; TT2 46:2-47:7.] As a result of the phone call, Ms. Peterson wrote a note to Mr. Lusk dated September 10, 2005, memorializing the child support settlement agreement. [Exhibit 48:1385; TT1 97:1-13.]

During the July 2005 telephone conversation with Mr. Lusk, Ms. Peterson commented "that now all we have to deal with is the retirement and savings plan. His response was that was not available to him right now." [TT1 97:17-98:3.] Mr. Lusk has no recollection of the telephone call. [TT2 21:16-25.] However, Mr. Lusk produced no writings that showed the agreement reached regarding child support arrearage cure, as memorialized by Ms. Peterson's letter dated September 10, 2005, was reach by

writings rather than by phone. Ms. Peterson testified that if such a letter existed she would have a copy and would have produced it [TT2 45:7-46:1.]

On August 5, 2016, Peterson filed with the Ventura County Superior Court, Case No. D219257, a post-judgment Request for Orders for a determination and distribution of the community property interest in Lusk's Allstate Pension Plan and the Lusk's Allstate 401(k) Savings Plan (Exhibit 56, DX1474 – 1523). [SF 19.] Mr. Lusk asserted at the October 26, 2016 hearing, in the Ventura County Superior Court, that Ms. Peterson and Mr. Lusk intended to each waive their rights to the other's retirement benefits. [TT2 18:17-25.] The Ventura County Superior Court did not find that credible in the face of the unambiguous MSA. [Exhibit 54.] Further, Mr. Lusk never raised the argument in the Ventura County Superior Court that the 1997 Move Away Order absolved him of his community property responsibilities regarding the retirement accounts. [Id.]

Mr. Lusk never raised the argument in the Ventura County Superior Court that Ms. Peterson was entitled to an interest in the 401(k) Plan, but not the pension. [Exhibits 54, 56; TT2 29:1-19; 30:1.]

After a hearing on October 26, 2016, the Ventura County Superior Court made its Findings and Order After Hearing on December 12, 2016 (the "State Court Order") (Exhibits 35 and 36:0254 – 0262). [SF 20.] The State Court Order granted Peterson's request for a determination of her community property interest in the Allstate Pension Plan and the Allstate 401(k) Savings Plan. (Id.) [SF 21.] The State Court Order

provides that Peterson's interest in the Allstate Retirement
Plan is $119,788, "which Lusk shall pay directly to Peterson
forthwith." (Id.) [SF 22.] The State Court order further
provides that $34,198 withdrawn by Lusk from the Allstate
401(k) Savings Plan constituted the community property interest
of Peterson and Lusk and that "Lusk shall pay forthwith to
Peterson $17,089.00 as her one-half share." (Id.) [SF 23.]
Finally, the State Court order awarded Peterson attorneys' fees
and costs in the amount of $10,000.00. (Id.) [SF 24.] Lusk
never paid Peterson any of Peterson's interest in the Allstate
Pension Plan and the Allstate 401(k) Savings Plan, or
attorneys' fees and costs. [SF 25.] Ms. Peterson took no
significant steps to collect the State Court Order. [TT1 105:7-
13.]

     Mr. Lusk now contends that Ms. Peterson had retirement
benefits that were undisclosed at the time of the MSA. Mr. Lusk
bases this contention on a box checked on Ms. Peterson's 1993
W-2 [Exhibit 59:1552; TT1 117:15-120:10.]. Ms. Peterson's
testimony directly controverts the contention. [Id.; 128:17-
129:21.] There is no other evidence of that Ms. Peterson had an
undisclosed retirement account. The court finds that Ms.
Peterson did not have an undisclosed retirement account.

     Lusk filed his chapter 13 case on January 26, 2017
(Exhibit 37), seeking to discharge his obligation to Peterson.
The $146,877 debt owed to Ms. Peterson scheduled by MT on this
Schedule F is undisputed and not subject to setoff. [Exhibit
37:295; TT1 67:3-17.] The Petition was filed 45 days after
entry of the December 12, 2016 State Court Order. [SF 26.] Lusk

admits he owed a fiduciary duty to Peterson regarding Peterson's community property interest in the Allstate Pension Plan and the Allstate 401(k) Savings Plan. [SF 27.] Lusk admits he breached his fiduciary duty to Peterson when he withdrew all funds from the Allstate Pension Plan and the Allstate 401(k) Savings Plan and did not pay Peterson her community property share of the Allstate Pension Plan and the Allstate 401(k) Savings Plan. [SF 28.]

**Issue Presented.**

1.    Whether Mr. Lusk engaged in fraud or defalcation while acting in a fiduciary capacity when Mr. Lusk breached his fiduciary duty to Ms. Peterson by not delivering to Ms. Peterson her community property interest in the retirement funds earned during their marriage.

2.    Whether Ms. Peterson's December 12, 2016 Ventura County Superior Court Findings and Order After Hearing (the "State Court Order") dividing community property and quantifying Peterson's community property interest in the Allstate Retirement Plan and the Allstate 401(k) Savings Plan is not dischargeable in Mr. Lusk's chapter 13 bankruptcy because Mr. Lusk breached his marital fiduciary duty to Peterson by embezzling the funds for his own use.

3.    Whether the Allstate Pension Plan and the Allstate 401(k) Savings Plan funds (and the traceable proceeds of those funds, which on the petition date were held in Lusk's bank accounts) were/are held by Lusk for Peterson in trust; and Whether the funds, which on the petition date were held in Lusk's bank accounts, belong to Peterson.

**The Parties Contentions.**

Mr. Lusk contends:

1.   Lusk's removal of the funds was not an intentional violation of the 1994 court order. When he removed the funds Allstate Pension Plan and the Allstate 40 I (k) Savings Plan, Lusk believed Peterson had no right to any of the funds;

2.   Peterson has only a state court order awarding her the amount of $146,877. No trust corpus was identified by the state court order. No express trust was created by the state court order;

3.   There is no showing that the award of money is not an adequate remedy;

4.   The belated request for equitable remedy is an attempt to circumvent the consequences of Lusk's confirmed Chapter 13 Plan;

5.   Peterson's conduct in obtaining the state court orders constitutes "unclean hands" which prevents her from qualifying for equitable remedy of tracing I constructive trust;

6.   To the extent that Peterson seeks an equitable remedy, it affects the property rights of Lusk's spouse, Carol, who is not a party to this lawsuit.

Ms. Peterson contends:

1.   Lusk owed Peterson a fiduciary duty with regard to the Allstate Pension Plan and the Allstate 401(k) Savings Plan.

2.   Lusk engaged in fraud or defalcation regarding the Allstate Pension Plan and the Allstate 401(k) Savings Plan when

Lusk withdrew the funds from the plan and (i) did not provide information to Peterson, or (ii) pay Peterson's share of the funds to Peterson.

3. Once Lusk withdrew the Peterson's funds from the Allstate Pension Plan and the Allstate 401(k) Savings Plan, he held the Peterson's funds in trust for Peterson.

4. The funds held by Lusk in trust for Peterson and must be turned over to Peterson.

5. All funds, proceeds, or assets traceable from the Allstate Pension Plan and the Allstate 401(k) Savings Plan, to the amounts determined to be Peterson's ($146,877) must be turned over to Peterson.

6. To the extent Lusk does not possess funds, proceeds, or assets traceable from the Allstate Pension Plan and the Allstate 401(k) Savings Plan, to the amounts determined to be Peterson's ($146,877), that remaining debt is not dischargeable in Lusk's chapter 13 case.

7. Peterson is entitled to attorneys' fees and expenses incurred.

**Analysis and Conclusion of law.**

The complaint asserts a single claim, under 11 U.S.C. §§ 1328(a)(2) and 523(a)(4), to determine dischargeability of debt for fraud or defalcation while acting in fiduciary capacity. The complaint also asserts Defendant held the funds withdrawn from the Allstate Pension Plan and the Allstate 401 (k) Savings Plan as trustee for Peterson.

Lusk owed Peterson a fiduciary duty with regard to the community property acquired during their marriage, which

existed from the date of marriage to the date of division of

the community assets. California Family Code Section 1100(e)

defines the marital relationship as a fiduciary relationship.

In addition, it spells out the duty of full disclosure. It

provides:

> Each spouse shall act with respect to the
> other spouse in the management and control
> of the community assets and liabilities in
> accordance with the general rules governing
> fiduciary relationships which control the
> actions of persons having relationships of
> personal confidence as specified in Section
> 721, until such time as the assets and
> liabilities have been divided by the
> parties or by a court.

> This duty includes the obligation to make
> full disclosure to the other spouse of all
> material facts and information regarding
> the existence, characterization, and
> valuation of all assets in which the
> community has or may have an interest and
> debts for which the community may be
> liable, and to provide equal access to all
> information, records, and books that
> pertain to the value and character of those
> assets and debts, upon request.

Cal. Fam. Code § 1100(e)

California Family Code Section § 721(b) further defines

the duties to make full disclosure and account for community

assets:

> [I]n transactions between themselves,
> spouses are subject to the general rules
> governing fiduciary relationships that
> control the actions of persons occupying
> confidential relations with each other.
> This confidential relationship imposes a
> duty of the highest good faith and fair
> dealing on each spouse, and neither shall
> take any unfair advantage of the other..

> This confidential relationship is a fiduciary relationship subject to the same rights and duties of nonmarital business partners, as provided in Sections Sections 16403, 16404, and 16503 of the Corporations Code , including, but not limited to, the following:
>
> (1) Providing each spouse access at all times to any books kept regarding a transaction for the purposes of inspection and copying.
>
> (2) Rendering upon request, true and full information of all things affecting any transaction that concerns the community property. Nothing in this section is intended to impose a duty for either spouse to keep detailed books and records of community property transactions.
>
> (3) Accounting to the spouse, and holding as a trustee, any benefit or profit derived from any transaction by one spouse without the consent of the other spouse that concerns the community property.

Cal. Fam. Code § 721

*In re Stanifer (Lovell v. Stanifer)* (1999) 236 B.R. 709.

(1) California statutes requiring each spouse to make full disclosure of existence of all community assets, and to provide full information regarding any transaction affecting such community assets, together with California case law regarding fiduciary obligations of spouses as regards community property, gave rise to ``express trust,'' of kind required under dischargeability exception, and (2) debtor-husband's retention of lump sum distribution from his individual retirement account (IRA), as community property that was not divided at time of divorce, and failure to account to his former wife therefor, was in nature of ``defalcation.''

*Bullock v. Bankchampaign, N.A.* (2013) 133 S. Court. 1754; 569 U.S. 267. The term ''defalcation'' in the Bankruptcy Code includes a culpable state of mind requirement involving knowledge of, or gross recklessness in respect to, the improper nature of the fiduciary behavior. Where the conduct at issue does not involve bad faith, moral turpitude, or other immoral conduct, ''defalcation'' requires an intentional wrong. An intentional wrong includes not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent. Where actual knowledge of wrongdoing is lacking, conduct is considered as equivalent if, as set forth in the Model Penal Code, the fiduciary ''consciously disregards,'' or is willfully blind to, ''a substantial and unjustifiable risk'' that his conduct will violate a fiduciary duty.

To show the Lusk held the funds in trust for Peterson for purposes of § 523(a)(4), the fiduciary relationship must be one arising from an express or technical trust imposed by statute. For a trust relationship to be established under § 523(a)(4), the applicable statute must clearly define fiduciary duties and identify trust property. The trust giving rise to a fiduciary relationship under § 523(a)(4) must be imposed prior to (and without reference to) any wrongdoing by the debtor. *See* Nondischargeable Debts (Exceptions to Discharge), Cal. Prac. Guide Bankruptcy Ch. 22-C, and the cases cited there. Cal. Fam. Code § 721 provides that spouses hold as a trustee any benefit or profit derived from any transaction by one spouse without the consent of the other spouse that concerns the community

3O29458

property. See Cal. Fam. Code § 721.

The evidence establishes that Mr. Lusk consciously disregarded, or was willfully blind to, a substantial and unjustifiable risk that his conduct would violate a fiduciary duty.

Mr. Lusk pleads ignorance that he had a responsibility to Ms. Peterson regarding the retirement benefits. Mr. Lusk has made inconsistent arguments regarding why he had no responsibility to Ms. Peterson, from claiming misunderstanding of the unambiguous MSA; to an argument that Ms. Peterson is entitled to only a portion of the smaller 401(k) account and not the substantial Pension; to an argument that the 1997 Move Away Order, which never mentioned community property but only support, extinguished his obligation. These contentions are not credible.

Mr. Lusk is a well-educated and capable man. He holds a bachelor's degree in marketing, and is a licensed insurance agent, and has been since 1986. Insurance contracts are indeed contracts, like the MSA and the Move Away Order, which were agreements Mr. Lusk entered into with Ms. Peterson. Both the MSA and Move Away Order are unambiguous regarding the subjects addressed.

The Ventura County Superior Court specifically found the MSA was clear and unambiguous, and applied to formula in the MSA to determine Ms. Peterson's interest in the retirement funds.

Mr. Lusk initially argued that Ms. Peterson had a right to only the 401(k) funds. But he had already withdrawn the 401(K)

3O29458

funds in 1999. That admission in itself demonstrates Mr. Lusk's overarching intent to deprive Ms. Peterson of her share of the retirement funds. That demonstrates not only a reckless disregard for Ms. Peterson's rights, but the culpable state of mind involving knowledge of the improper nature of the fiduciary behavior.

On his sixtieth birthday, in September 2013, Mr. Lusk asked Allstate to distribute the entire benefit to him as a lump-sum distribution. Just six months later, Ms. Peterson began inquiring about the pension. Mr. Lusk engaged in a determined effort to dodge Ms. Peterson, apparently in the hope that she would go away. Upon her persistence, he realized "Ms. Peterson is not going away," and "She's not going to stop" her efforts. Upon receiving three letters from Mr. Goodman, Mr. Lusk did not raise his asserted defenses that (1) the MSA did not require him to share the retirement with Ms. Peterson, (2) the 1997 Move Away Order extinguished his responsibility to Ms. Peterson, or (3) her asserted failure to disclose her own non-existent retirement plan excused his performance. In 2005, at Matthew's high school graduation, Mr. Lusk did not tell Ms. Peterson she was wrong that they still needed to deal with the pension aspect of the MSA; neither did he in 2010 after Matthew graduated from college. That is because Mr. Lush knew the issue was outstanding. At the very least, the comments, and the letters, put Mr. Lusk on notice that he had a duty to Ms. Peterson. Under *S. Stone Co. v. Singer*, 665 F.2d 698, 703 (5th Cir. 1982), and *United States v. Hale*, 422 U.S. 171, 176 (1975), the failure to reply to a letter containing statements

which it would be natural under all the circumstances for the addressee to deny if he or she believed them untrue is receivable as evidence of an admission by silence.

On February 28, 2015, ten months after her first inquiry, Mr. Lusk's Wells Fargo Bank account 7910 held $100,000.21. Between March 1, 2015, and March 22, 2016, Mr. Lusk transferred $85,377.66 from account 7910 to Mr. Lusk's separately-owned Wells Fargo checking account 9751. On January 1, 2015, Mr. Lusk's Wells Fargo Traditional IRA account 2931 held $252,980.95. Between January 1, 2015 and January 26, 2017, MT took $26,000 in cash withdrawals, and transferred $180,619.85 to his separately owned checking account, Wells Fargo Bank account number 9751.

Between April 16, 2015 and December 2016, Mr. Lusk dispensed with $225,168.72, through large in-bank cash withdrawals and cashier check purchases. During a similar timeframe, from 2014 to 2016, Mr. Lush purchased nine vehicles, with a value on the petition date of $98,263.00 — all during the timeframe when Ms. Peterson was seeking information about her retirement funds, and Mr. Peterson knew she was asking questions. This demonstrates an intention to disburse the funds before Ms. Peterson could get ahold of them.

Even after the Ventura county Superior Court entered the order in December 2016, Mr. Lusk's Wells Fargo Bank Rollover IRA account 2931 held $83,983.51 on the January 26, 2017 petition date; Wells Fargo Bank Rollover IRA account 7910 held $9,792.64. On the trial date, the accounts held "just a little over 30" and about $2,000.00, respectively. This depletion was

after Mr. Lusk knew—through a final order of the Superior Court—that Ms. Peterson was entitled to the money in those accounts.

Mr. Lusk knowingly and intentionally breached his fiduciary duty to Ms. Peterson. Clearly, the minimum conscious disregard or is willful blindness to a substantial and unjustifiable risk that his conduct will violate a fiduciary duty is met here. *Bullock v. Bankchampaign, N.A.*, *supra*.

Because Mr. Lusk held the funds in express trust for Ms. Peterson, turnover of the remaining funds to Ms. Peterson is appropriate. Ms. Peterson did not make an election of remedies in the Ventura County Court. 28 Cal.Jur.3d, election of remedies at Section 11. The general rule is an election occurs when a party who is entitled to force two inconsistent remedies institutes an action on one such remedy or performs an act in pursuit of such remedy whereby he or she gains an advantage over the other party or causes the other party damages. Ms. Peterson was able to take essentially no action in furtherance of her State Court Order.

Ms. Peterson requests a judgment that the remaining debt is non-dischargeable in the chapter 13 bankruptcy case, which is granted. Under *In re Davies*, 494 B.R. 453 (Bankr. C.D. Cal. 2013), under California law, any of Chapter 7 debtor's obligations to a judgment creditor determined to be nondischargeable would also be nondischargeable against postpetition community property. 11 U.S.C. §§ 523, 524(a)(3), (b); Cal.Fam.Code § 910. 11 U.S.C. § 1328.

3O29458

Peterson is entitled to an award of her attorneys' fees and costs incurred in this adversary proceeding. Under Cal. Civ. Proc. Code § 1021:

> Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided.

Cal. Civ. Proc. Code § 1021.

This statute permits attorney's fees agreements, but contains no restriction as to the nature of the lawsuits for which such fees may be recovered. California cases have held that where attorney's fees are not recoverable for a non-contract action under section 1717, they may nonetheless be recoverable under section 1021. *See 3250 Wilshire Blvd. Bldg. v. W.R. Grace & Co.*, 990 F.2d 487, 489 (9th Cir. 1993).

Under the MSA, Peterson is entitled to recover her attorneys' fees. Under the MSA, at page 9, paragraph VII(B):

> If either party fails to perform his or her respective obligations under this Agreement or the judgment of dissolution of marriage, and the other is thereby required to incur attorneys' fees, accountants' fees, or other fees or costs then either party shall be entitled to apply to any court of competent jurisdiction for stich fees and costs against the other party. The same rights apply if either party has breached any warranties or representations contained in this Agreement.

Respectfully submitted by:

Dated: May 11, 2018        KLEIN, DENATALE, GOLDNER,
COOPER, ROSENLIEB & KIMBALL, LLP

By: _____
      HAGOP T. BEDOYAN, ESQ.
      LISA HOLDER, ESQ. Attorneys
      for Susan Peterson

Original