PETER B. BUNTING (State Bar No. 124104)
Attorney at Law
2501 West Shaw Avenue, Suite 119
Fresno, CA 93711
(559) 226-4030 - Telephone
(559) 226-4148 - Facsimile
e-mail: info@peterbbuntinglaw.com

Attorney for Defendant Lusk

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF CALIFORNIA, FRESNO

In re:

MICHAEL LLOYD LUSK AND
CAROL ANN LUSK,

    Debtors,

SUSAN P. PETERSON,

    Plaintiff,

MICHAEL LLOYD LUSK,

    Defendant.

Case No.: 17-10245-B-13

Chapter 13

**ADVERSARY PRO. NO.: 17-01016-B**

THE HONORABLE RENÉ LASTRETO

**DEDENDANT'S PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1

## Jurisdiction

1. On January 26, 2017, Michael Lloyd Lusk ("Defendant" or "Lusk") and his current wife, Carol Ann Lusk, jointly filed a voluntary petition under Chapter 13, case number 17-10245 ("Petition"), in the above-captioned court. [Exhibit 37, page PX0265]

2. Susan P. Peterson ("Plaintiff" or "Peterson") is listed in schedule E/F filed in support of the Petition as a creditor holding an unsecured judgment against Lusk in the amount of $146,877. [PX0295]

3. Peterson timely filed the above-captioned adversary proceeding against Lusk asserting in her First Amended Complaint, non-dischargeability of debt under 11 U.S.C. §§ 1328(a)(2) and 523(a)(4). [Exhibit 53; DX1415, DX1419, lines 24-25]

4. Peterson, in her amended complaint, and Lusk, in his answer, have both voluntarily consented to the entry of a final order of judgment by this Court.

5. Carol Ann Lusk was not named as a defendant in the adversary proceeding; she has made no appearance and has not consented to entry of a final order of judgment.

## Findings of Fact

6. Defendant and Plaintiff (cumulatively, "The Parties") were married April 10, 1982, and separated January 7, 1994. [Stipulated Facts, Paragraph 1, Joint Pretrial Order, Document 41 on the Court's Docket, ("SF 1")]

7. On August 3, 1994, The Parties entered into a Marital Settlement Agreement ("MSA") which was incorporated by a Judgment of Dissolution of the marriage of The Parties. [SF 3, 4] Each of The Parties was represented by legal counsel. [DX1440]

8. The MSA divided community property of The Parties. [DX1424]

9. The MSA identified an Allstate 401(k) Saving Plan and an Allstate Retirement Plan[1] as community property of the marriage to be disbursed at a later time. Both of these assets were held in Lusk's name. [DX1423-1424]

---

[1] Exhibit 53, page DX1443 is a letter from QDRO consultants which used the terms "Allstate Retirement Plan" and "Allstate 401(k) Savings Plan". For clarity, these terms will be adopted herein, however The Parties and the Superior Court for the County of Ventura use somewhat different terms.

10. As confirmed by subsequent Ruling On Submitted Matter [Exhibit 35, PX0254] and court findings ("2016 Findings") [DX1446-1447] the MSA required the Allstate Retirement Plan to be divided between The Parties according to a time-based formula and the Allstate 401(k) Saving Plan to be divided 50/50 between The Parties. Lusk had a fiduciary duty to pay Peterson's share to her. [SF 8; Exhibit 53, DX1422]

11. The MSA did not identify any community property retirement plan under Peterson's name. [DX1424]

12. The MSA required Lusk to pay to Peterson child support [DX1429] and spousal support. [DX1430]

13. On August 13, 1997, The Parties entered into a stipulation, (the "1997 Stipulation") regarding custody of their minor child. [Exhibit 55, DX1469].

14. At the time the 1997 Stipulation was signed, Peterson was represented by legal counsel, Lusk represented himself *in pro per*. [DX1472]

15. The 1997 Stipulation permanently terminated all future obligation of Lusk to pay spousal support to Peterson beyond December 31, 1997. [DX1472]

16. In the years from 1999 thru 2005, Lusk, without Peterson's knowledge and without Peterson's consent, withdrew all funds of the Allstate 401(k) Saving Plan, including Peterson's 50% share. [Trial Transcript, day 1, page 28, lines 4 – 25; SF 13, 14, 15; QDRO letter, Exhibit 8, PX0045]

17. All of the money taken from the Allstate 401(k) Savings Plan had been spent before the year 2013. [stipulation on the record, March 22, page 28, line 1 thru page 29 line 6]

18. In September, 2013 Lusk, without Peterson's knowledge and without Peterson's consent, withdrew all funds of the Allstate Retirement Plan, including all of that portion which should have been paid to Peterson. [SF 9, 10]

19. Carol Ann Lusk, as spouse of the Defendant with community property rights, signed a notarized form of consent to withdrawal of the Allstate Retirement Plan funds. [Exhibit 3; PX0029]

20.     In the years since the divorce, The Parties avoided speaking to each other. [Trial Transcript, March 23, page 41, lines 17 - 23; page 43, lines 2 – 4; page 46, line 24 – page 47, line 2; page 48, lines 1 – 3]    Direct communication between The Parties was done by letters and usually involved child support and custody matters.  Peterson saved copies of the letters. [Trial Transcript, March 22, page 108, lines 15 – 21] Peterson produced all of the letters in Exhibit 48 in her response to discovery.

21.     From August 5, 1994 to April 28, 2014, there were 30 letters from Peterson to Lusk, one letter from Peterson to her attorney Teresa McConville and three letters from Lusk to Peterson. [Response to motion to produce, PX1346, lines 14 – 16; Exhibit 48, PX1344, *et. seq.*]

22.     The letter from Peterson to her attorney, Teresa McConville, complained about fees charged to Peterson by McConville resulting from communication from Lusk to McConville.  None of the letters mention the Allstate Retirement Plan, the Allstate 401(k) Savings Plan, a QDRO or any expectation to receive money awarded under the MSA, except child support and spousal support.  [Exhibit 48, PX1344, *et. seq.*]

23.     The letter from Peterson to her attorney, Teresa McConville, complained about fees charged to Peterson by McConville resulting from communication from Lusk to McConville. [DX1359]

24.     One document is an enclosure to a letter.  It is a written confirmation signed by The Parties, apparently without benefit of attorney, which indicates an agreement had been reached in a telephone conversation between The Parties.  [DX1386]

25.     On April 28, 2014 and again on June 4, 2014, a legal assistant of the Law Offices of Darren J. Goodman sent two letters in succession advising Lusk that Goodman had been retained by Peterson to divide the "Savings and Profit Sharing Fund of Sears Employees" and requesting Lusk to sign a release which would enable a QDRO to be prepared.  The letters also requested copies of annual account statements from the plan.  Peterson received copies of the letters. [Exhibits 4, 5, PX0034 – PX0038; Trial Transcript, March 22, pages 112, lines 10 – 22]

26.     Lusk had quashed a subpoena for broad disclosure of retirement information, including the Allstate Retirement Plan. [DX1526, line 26 – 27]  Subsequently, attorney

Goodman a called Lusk by telephone. During that conversation, Lusk informed Goodman that Peterson had waived her interest in Lusk's retirement plans in exchange for his waiver of any interest in her retirement plans. [Peterson Declaration, Exhibit 56, page DX1479, lines 8 – 12]

27. On April 29, 2015 Attorney Darren Goodman personally wrote a letter to Lusk, again specifically identifying the "Savings and Profit Sharing Fund of Sears Employees". The letter did not mention the Allstate Retirement Plan. The letter states that Goodman had previously asked for copies of annual account statements from Lusk's retirement plans. [Exhibit 6, PX0037]

28. On May 09, 2016 attorney Goodman received a letter from QDRO consultants which revealed that in the period of time from May 18, 1999 and August 17, 2005, Lusk had withdrawn all of the funds from the Allstate 401(k) Saving Plan. The letter also revealed that on September 6, 2013, Lusk withdrew all of the money in the Allstate Retirement Plan. [QDRO letter, Exhibit 53, DX1443 and DX1444]

29. On August 27, 2015, Peterson filed in the Ventura County Superior Court a Request For. . .Entry of Order For Division of Retirement Benefits. . ("Request For Order" or "RFO") [Exhibit 56, DX1417]

30. In support of the RFO, attorney Goodman filed a declaration stating:

> 7. The Judgment identifies only one retirement plan, the Savings and Profit Sharing Fund of Sears Employees; however, Respondent may be a participant in other retirement plans. The Judgment suggests that there may be additional plans as the Judgment makes references to "pension and retirement plan". Moreover, it is my experience in representing other clients that employees of Allstate Insurance Company are eligible to participate in certain defined benefit plans maintained by Allstate's parent company, Sears Roebuck and Company, such as Sears Pension Plan. [DX1482]

31. In support of the RFO, Peterson signed a Declaration stating:

> a. "I understood at the time of the settlement that I was entitled to a portion of Respondent's future monthly pension benefit in addition to benefits under a Savings and Profit Sharing Plan". [DX1478, lines 24 – 26]

b. "I understand that Respondent had a conversation with Mr. Goodman in which Respondent suggested that I waived my interest in his retirement plans in exchange for his waiver of any interest in my retirement plans. During the period of marriage to Respondent, I was employed, but did not earn any retirement benefits. Moreover, I have not in any manner or at any time, waived my interests in any of Respondent's plans. * * * Although I was employed at numerous places of employment during our marriage, I did not participate in any retirement plans at any of my place of employment and thus, did not earn any retirement benefits during the marital period". [Exhibit 56, DX1479, lines 8 – 12 and lines 25 – 27]

c. "I did not waive my interest in Respondent's retirement plans. In fact, since the date of separation, Respondent and I have discussed my interest in his retirement plans periodically. Specifically, in the summer of 2005, during a telephonic conversation with Respondent, I inquired about his retirement plans to which he responded that "retirement benefits were not available to him at that time." In June 2010, I sent Respondent a letter in which I again inquired about the status of his retirement benefits. Respondent never responded to said letter".
[Exhibit 56, DX1480, lines 3 – 7]

32. In support of the opposition to the RFO, Lusk signed a declaration stating:

a. "Petitioner and I each had our own retirement plans including our own Social Security benefits, IRAs and other retirement plans with the exception of my benefit packages." [Reporter Transcript of 2016 Hearing; Exhibit 54, page DX1416, lines 10 – 13]

b. It was our intent at the time that we would keep our respective retirement plans. [ReptrTranscript of 2016 Hearing; Exhibit 54, DX1416, lines 10 – 13]

33. In support of the reply to opposition to the RFO, Peterson signed a Declaration stating:

a. "At no time did I waive my interest in Respondent's Allstate retirement plans. We did agree that each party would receive our respective Individual Retirement Accounts—which were each of modest value—as reflected in the Judgment, but the Allstate retirement accounts were not a part of that. I did not even have any other retirement plans of my own beside the $5,500 IRA. The intent at the time we negotiated our Marital Settlement Agreement is clearly that I would receive my community property share in Respondent's Allstate retirement benefits".
[Exhibit 57, DX1526, lines 10 – 15]

b. It was my understanding from the way that the Marital Settlement Agreement was written that I needed to wait until Respondent reached retirement age before I could enforce my community property rights in his pension and retirement plans. Specifically, in the summer of 2005, during a telephonic conversation with Respondent, I inquired about his retirement plans to which he responded that "retirement benefits were not available to him at that time." After having reviewed the records produced by Allstate, I now know that Respondent was lying to me, as he had already withdrawn the entirety of the 401(k) plan by that date. In June 2010, I sent Respondent a letter in which I again inquired about the status of his retirement benefits. Respondent never responded.

[Exhibit 57, DX1527, lines 12 - 21]

34. In support of the RFO, Peterson's attorney submitted a Memorandum of Points and Authorities which, in substance, argues: In addition to the Savings and Profit Sharing Plan, Lusk may have benefits under a "Sears Pension Plan", and if so, the community interest should be deemed an omitted asset and should be divided by the court. [RFO Memo of P & A, Exhibit 56, pages DX1487, line 4 thru DX1488, line 13]

35. On October 26, 2016 the court held a hearing to determine the rights of the parties under the MSA. At the hearing Lusk was represented by legal counsel. Peterson was represented by new counsel, Douglas Goldwater. Lusk did not contest the fact that he removed all of the funds in the Allstate 401(k) Saving Plan without the knowledge or consent of Peterson. He did not oppose the assertion that he owed Peterson for her share of the Allstate 401(k) Savings Plan. [Reporter's Transcript of 2016 Hearing, Exhibit 54]

36. At the hearing in 2016, Lusk asserted that the parties had an agreement that each would keep his or her retirement plans. The court determined that the MSA divided a retirement plan using a time-based formula which could only apply to the Allstate Retirement Plan because the Allstate 401(k) Saving Plan was not subject to a time-based formula. Based on this legal analysis, the court found that it was clear on its face that both the Allstate 401(k) Saving Plan and the Allstate Retirement Plan were subject to division under the terms of the MSA. The court observed that The Parties were represented by legal counsel at the time of MSA and the MSA contained a valid clause providing that any agreements outside the MSA must be in writing signed by The Parties. [2016 Hearing Transcript]

37.　　The Superior Court Judge asked Lusk's attorney for an offer of proof as to what evidence would be offered to dispute the terms that are clearly defined in the MSA. [2016 Hearing Transcript, Exhibit 54, DX1455, lines 16 – 19; DX1459 lines 4 – 6]

38.　　Upon learning that Lusk proposed to give parol evidence of The Parties intentions of The Parties to keep their respective retirement plans, the court denied the request for hearing on the basis that the proposed parol evidence would contradict the clear and unambiguous terms of the MSA[2]. [DX1461, lines 6 – 27]

39.　　The State Court entered a money judgment, ordering Defendant to pay to Plaintiff a total amount of $146,877, based on: $119,788 for the one-half share of the community interest in Allstate Pension Plan[3] and $17,089 for the Plaintiff's one-half share of the community interest in the Allstate 401(k) Saving Plan, plus $10,000 in attorney fees and costs that were incurred to enforce the provisions of the Judgment.  The court did not impose a trust on any funds or property held by Lusk [Ruling on Submitted Matter, Exhibit 40, PX0364; Findings after 2016 Hearing, DX1447 – 1448]

40.　　On January 26, 2017 Lusk and his current wife (cumulatively, "The Lusks") filed the Bankruptcy Petition, with supporting schedules and statement of affairs together with the "Rights and Responsibilities of Chapter 13 Debtors and their Attorneys" [Exhibit 37, PX0265, *et. seq.*]

41.　　On January 26, 2017 The Lusks also filed a chapter 13 plan.  Paragraph 2.15 of the plan states:  "Class 7 consists of all other unsecured claims not listed as Class 5 or 6 claims. These claims will receive no less that a 5% dividend . . ." (Exhibit 51, DX1405)

---

[2] In Plaintiff's Memorandum Decision, [court docket 52] page 12, lines 9 - 14, Peterson asserts that the Superior Court did not find credible Lusk's assertion that The Parties "intended to each waive their rights to the other's retirement benefits".  The transcript of that hearing shows that the judge never questioned anyone's credibility.  The court refused to take parol evidence regarding intentions of The Parties. [Hearing Transcript, Exhibit 54, DX1459, line 4 - DX1460, line 11]
[3] The California Superior Court referred to "The Pension Plan" It is clear from the context that The Pension Plan and The Retirement Plan are one and the same.[Ruling on Submitted Matter, Exhibit 40, PX0364, paragraphs 3 and 4; Findings after 2016 Hearing, Exhibit 53, DX1447 - 1448]

42. On March 10, 2017 Peterson filed her First Amended Complaint to Determine Nondischargeability of Debt. (Exhibit 53, DX1415)

43. On April 12, 2017 Peterson seasonably filed a general unsecured claim in the amount of $146,877. (Exhibit 60, DX1558)

44. On May 16, 2017 the above-captioned court entered the Order Confirming Plan.
(Exhibit 52, DX1412)

45. During the trial in this court, Peterson testified that:

> a. When asked about what pensions she was entitled to as a result of the MSA, Peterson responded with a crisp and clear statement: "I was entitled to a portion of the retirement pension plan from Allstate based on the amount of time of the marriage, and there was a mathematic formula put in there to determine the amount, and then a portion of the savings and profit." [Trial Transcript, March 22, page 111, lines 7 – 16]

> a. Peterson regularly kept copies of letters of correspondence exchanged between Lusk and herself. [Trial Transcript, March 22, page 108, lines 13 – 21]

> b. Trial Exhibit 48 contains of all of the letters exchanged between Peterson and Lusk. [Trial Transcript, March 23, page 45, lines 12 – 20]

> c. Peterson and Lusk did not talk to each other. [Trial Transcript, March 23, page 48, lines 1 – 3]

> d. Peterson did not contact her attorney concerning the failure to mention the Allstate Retirement Plan in the letters of April 28, 2014 and June 4, 2014. She was confused the names that the funds were called. [Trial Transcript, March 22, page 113, lines 10 – 14]

> e. Under cross examination which was neither harsh nor proficient, Peterson went on to explain that she was "not sure what the titles of things were". [Trial Transcript, March 22, page 114, lines 1 – 4]

46. At trial in this court, Lusk testified that:

> a. Peterson never personally contacted Lusk regarding pension funds coming from the MSA. [Trial Transcript, March 23, page 41, lines 17 – 21]

9

b. In the year 2005, Lusk attended his son's high school graduation in Houston Texas. At the ceremony, Lusk and Peterson exchanged pleasantries, but engaged in no lengthy conversation. Lusk was invited by his daughter to attend a graduation party, but Lusk declined to attend because he did not want to have contact with Peterson. [Trial Transcript, March 23, Page 41, line 24 through Page 43, line 4]

c. Lusk and Peterson never talked by telephone [Trial Transcript, March 23, page 41, lines 17 – 23]

d. Lusk is an educated and professional man, with a bachelor's degree in marketing from California State University at Chico. He is a California Licensed insurance agent, for personal property and casualty insurance. In his profession, he deals with contracts. He's been self-employed as an insurance agent since 2006. Before then, he worked with Allstate Insurance from 1986 until 2005. [Plaintiff's Memorandum Decision, Docket 52, page 3, lines 10 – 18]

47. The Parties filed jointly filed income tax returns for the year ending December 13, 1993. The form W-2 from Plaintiff's employer has an "X" on the box labeled pension. The Defendant testified that the W-2 and the electronic return both reflect that Plaintiff had a pension plan in the year 1993.

48. In the Joint Pre-Trial Order, The Parties stipulated that all evidence submitted to the court is authentic and admissible. Peterson testified that maybe the W-2 was a mistake, or maybe it was issued because she applied for a retirement plan after Lusk announced he was leaving in November, 1993.

///

///

### Conclusions Of Law

Based on the findings of fact hereinabove, this Court finds and concludes that the 1994 Judgment and the 2017 Order of the California Superior Court in and for the County of Ventura,

case number D 219257, are valid and final. The findings and conclusions contained therein are binding upon The Parties of this adversary proceeding.

The 1994 Judgment, as interpreted by the 2016 Court Order, had the legal effect of creating two trust funds: (1) The Plaintiff's one-half share of the community interest in the Allstate Retirement Plan (*sub nom* "Sears Pension Plan") in the amount of $119,788, and (2) the Plaintiff's one-half share of the community interest in the Allstate 401(k) Savings Plan in the amount of $17,089.00. -

Lusk took Peterson's money in the amount of $17,089.00 from the Allstate 401(k) Saving Plan and $119,788 from the Allstate Retirement Plan in violation of his fiduciary duty to pay to Peterson her share of the two express trusts created by the 1994 Judgment. [SF 27, 28]

To find a debt non-dischargeable for fraud or defalcation while acting in a fiduciary capacity requires a finding of intentional breach the fiduciary duty. 11 U.S.C. § 523 (a)(4), *Bullock v. Bankchampaign, N.A.* (2013) S. Court, 1754; 569 US. 267 Peterson contends that Lusk intentionally violated the terms of both express trusts. Lusk contends that the existence of these two express trusts was a surprise to him. He did not know about the Allstate Retirement Plan trust until the court ruled on it in the 2016 Order. Although the MSA did not state that Peterson retained an interest in the Allstate Retirement Plan, the 2016 Order was based on legal analysis that the time-based division of money could only apply to the Allstate Retirement Plan. that was the legal ruling. Lusk's contention is that the duty to pay was unknown to him until after he took the money.

The RFO written by Peterson's attorney states that the community property rights in the Allstate Retirement Plan may be an "omitted asset". His initial three letters did not mention the Allstate Retirement Plan. If the attorney did not understand the 1994 Judgment, it is doubtful that Lusk did.

Peterson attempted to undercut Lusk's defense at the RFO hearing and at the trial in this court. She signed a sworn statement in support of the RFO that "I understood at the time of the settlement that I was entitled to a portion of Respondent's future monthly pension benefit in addition to benefits under a Savings and Profit Sharing Plan." She then swore that she

11

periodically discussed her interest in the retirement plans with Lusk. She declared that in June, 2010 she wrote a letter to Lusk inquiring about her interest in the retirement benefits. She also declared that she had no community property retirement plan during their marriage.

At trial in this court, the facts changed: Peterson produced all the letters, but none of them mentioned retirement benefits. The Parties both testified that they don't talk; thus the periodic reminders did not happen[4].

Lusk produced into evidence a W-2 issued to Peterson for the tax year 1993 which revealed that she had a retirement plan before The Parties separated in 1994.

At trial, when asked about what pensions she was entitled under the MSA, Peterson initially recited: "I was entitled to a portion of the retirement pension plan from Allstate based on the amount of time of the marriage, and there was a mathematic formula put in there to determine the amount, and then a portion of the savings and profit."

When asked to explain why she did not contact her attorney regarding letters which failed to mention the Allstate Retirement Plan, she admitted that she was confused about the names that the funds were called, and finally said she was "not sure what the titles of things were".

Simply put, Lusk thought he had a deal. The MSA required him to pay spousal support, child support, each spouse kept his or her individual retirement accounts; each kept his or her retirement plan. The Lusk's Allstate 401(k) Savings Plan would be split later. The court finds and concludes that Lusk's violation of the Allstate Retirement Plan express trust was unintentional.

As to whether Lusk intentionally violated his fiduciary duty to give to Peterson her community interest in Allstate 401(k) Saving Plan, the Court concludes that Lusk's statement that he believed the 1997 Stipulation relieved him of the duty to share the money with Peterson is credible and uncontroverted. Even if Peterson had raised the subject, he would have ignored it, thinking he knew better.

---

[4] Given Lusk's demonstrated avoidance behavior toward Peterson the court finds that Lusk would not have discussed retirement funds with Peterson, even if she had brought up the subject.

12

Remedies

Peterson argues that she is entitled to a determination that Lusk holds or held in trust the funds from the Allstate Retirement Plan after he removed them from the Plan. As stated above, The Parties are bound by the findings of the state court in the 1994 Judgment and the 2016 Order. [Exhibit 35, PX0254] The 2016 Order made a finding that Lusk removed Peterson's money from the Allstate Pension Plan and the Allstate 401(k) Savings Plan. The 2016 Order did not identify a new corpus, and thus did not impose a new trust however; there is a second possible remedy which may be available in this Court.

The equitable remedy of tracing can be used to impose a constructive trust over funds wrongfully taken, even if the taking was by honest mistake. Ca. Civ. Code § 2224; *Cramer v. Biddison,* (1968) 257 Cal. App. 2d 720, 724; 65 Cal. Rptr. 624.

In this case, The Parties have stipulated that the IRA accounts held by Lusk are entirely funded from money he took from the Allstate Retirement Plan[5]. He also purchased several vehicles soon after he removed the money from the Allstate Retirement Plan. Under certain circumstances equity will give relief by impressing a constructive trust upon the property [ibid.] however, equity follows the law and, when the law determines the rights of the respective parties, a court of equity is without power to decree relief which the law denies. *Wilkison v. Wiederkehr*, 101 Cal. App. 4th 822. Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that could have been raised pertaining to the plan are entitled to res judicata effect. *Trulis v. Barton,* 107 F.3d 685, 691 (9th Cir. 1997)

In this case, the Lusks have filed and confirmed a plan which treats the unsecured claim filed by Peterson as a general unsecured claim. Equity cannot change the legal consequences of the order which confirmed the chapter 13 plan. This Court finds the terms of the confirmed plan binds the treatment of Peterson's claim to the treatment of a general unsecured claim.

The facts of this case also invite this Court to consider the equitable defense of unclean hands. *DeGarmo v. Goldman*, (1942) 19 Cal.2d 755. Peterson made sworn statements to the

---

[5] The Parties also stipulated that the funds from the Allstate 401(k) Plan had all been spent by Lusk and no longer existed.

state court and to this Court that she did not have a community property pension; that she gave Lusk periodic notice of her right to receive retirement funds under the MSA; and she described the two retirement funds described with particularity in sworn statements to both courts. These sworn misrepresentations were calculated to diminish the credibility of Lusks testimony. The state court may have come to a different decision if Peterson had made truthful statements. Her conduct bars her from equitable relief in this Court.

Respectfully submitted,

_Peter B Bunting_
Peter B. Bunting, attorney for Lusk